IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

NASIR SHARPE,

*Defendant.*

CRIMINAL ACTION
NO. 23-368

Pappert, J.                                                                   December 11, 2023

**MEMORANDUM**

Nasir Sharpe is charged in a one count Indictment with possession of a firearm by a person previously convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1). (ECF 1). The Government alleges Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents were surveilling Sharpe's residence as part of an investigation when Sharpe left his home with an apparent firearm in his pants. (Resp. in Opp. to Mot. to Dism., p. 3, ECF 13). An ATF agent then asked Philadelphia police officers to stop Sharpe, but after Sharpe refused to allow the officers to pat him down, the officers and agents took him to the ground and recovered a Glock pistol loaded with thirteen live rounds and equipped with an extended magazine. (*Id.*)

Sharpe has, among other convictions, three that trigger § 922(g)(1): one conviction for distributing fentanyl and cocaine within 1,000 feet of a school or playground, in violation of 21 U.S.C. § 860(a), a felony punishable by up to forty years' imprisonment, and two convictions for carrying a concealed firearm without a license, in violation of Pennsylvania's Uniform Firearms Act, 18 Pa. Cons. Stat. § 6106, both

1

felonies punishable by up to seven years' imprisonment.

Sharpe moves to dismiss the Indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him, as well as on its face. (Mot. to Dism., pp. 3–14, ECF 11). Sharpe's arguments are without merit, and the Court denies the motion.

I

A

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the United States Supreme Court established a history-based framework for deciding whether a firearm regulation is constitutional under the Second Amendment. 142 S. Ct. at 2127. Under *Bruen*, courts must first determine whether the text of the Second Amendment applies to a person and his proposed course of conduct and, if it does, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127, 2134–35.

In *Range v. Attorney General*, the Third Circuit Court of Appeals considered a civil action brought by Bryan Range, who sought a declaration that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him and an injunction prohibiting the law's enforcement against him. 69 F.4th 96, 98–99 (2023). Range previously pleaded guilty to one count of making a false statement to obtain food stamps, in violation of 62 Pa. Cons. Stat. § 481(a), a conviction that was then classified as a misdemeanor punishable by up to five years' imprisonment, which under § 922(g)(1) precluded Range from possessing a firearm. *Id.* at 98.

The District Court had granted summary judgment in favor of the Government.

*Range v. Lombardo*, 557 F. Supp. 3d 609 (E.D. Pa. 2021).  While Range's appeal was pending, the Supreme Court decided *Bruen*.  A Third Circuit panel affirmed the District Court's judgment under the *Bruen* framework.  *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022) (*per curiam*), *rev'd en banc*, 69 F.4th 96 (2023).  The Third Circuit then granted Range's petition for rehearing *en banc* and reversed the panel's decision, holding that the Government had "not shown that the Nation's historical tradition of firearm regulation supports depriving Range of his Second Amendment right to possess a firearm."  *Range*, 69 F.4th 96, 106 (2023).

*Range*'s holding was narrow and limited to the facts of that case, particularly the nature of Bryan Range's previous conviction.  *Range*, 69 F.4th at 106.  The Circuit's decision did not purport to vitiate § 922(g)(1) or limit Congress' ability to disarm those "who pose a threat to the orderly functioning of society."  *Range*, 69 F.4th at 110 (Ambro, J., concurring).  Our Republic has a longstanding history and tradition of depriving people with criminal histories like Sharpe's from possessing firearms.

B

Sharpe, like Range, is "one of the people" protected by the Second Amendment despite his prior felony convictions.  *See Range*, 69 F.4th at 101.  The Third Circuit held that "the people" in the Second Amendment's text refers to all Americans and not only law-abiding persons.  *Id*.  And the Government does not contend otherwise.  (Resp. in Opp. to Mot. to Dism., pp. 9–10).

The next question is whether the text of the Second Amendment applies to Sharpe's "proposed conduct."  *Bruen*, 142 S. Ct. at 2134–35.  If it does, the Government bears the burden to prove that its firearms regulation is "consistent with the Second

Amendment's text and historical understanding." *Id.* at 2131.  The Government contends that the Second Amendment does not apply to Sharpe's conduct because he does not maintain he possessed a firearm for a lawful purpose, and the Second Amendment does not protect his possession of a firearm while serving a criminal sentence.  (Resp. in Opp. to Mot. to Dism., pp. 10–13).  The Court need not address whether the Second Amendment covers Sharpe's conduct—even if it does, the Government has met its burden to show that 18 U.S.C. § 922(g)(1) as applied to Sharpe is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

"Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2133).  "Regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue," but "'modern regulations that were unimaginable at the founding' need only be 'relevantly similar' to one." *Id.* (quoting *Bruen*, 142 S. Ct. at 2131–2132).  The question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Bruen*, 142 S. Ct. at 2133.

The Government cites to *District of Columbia v. Heller*, in which the Supreme Court noted that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons."  554 U.S. 570, 626 (2008).  The Government also relies on two concurring opinions in *Bruen,* reaffirming the Supreme Court's statements in *Heller* that felon dispossession statutes are

4

longstanding and presumptively lawful. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (noting that the decision does not "disturb[ ] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns"); *see also id.* at 2162 (Kavanaugh, J., concurring) (emphasizing that "the Second Amendment allows a 'variety' of gun regulations," and *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." (citation omitted)).

## C

Firearm regulation in the era of the Second Amendment's ratification disarmed individuals who "posed a potential danger" to others. *Range*, 69 F.4th at 109–110 (Ambro, J., concurring). For example, during the American Revolution, Pennsylvania and Massachusetts disarmed British loyalists who refused to swear allegiance to the state or the United States to "eliminate[ ] the opportunity for [them] to violently protest the actions of the [state] government.'" Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early Origins of Gun Control*, 73 Fordham L. Rev. 487, 506–07 (2004), *quoted in Folajtar v. Attorney General*, 980 F.3d at 915 (Bibas, J., dissenting).

The understanding that dangerous individuals could be disarmed persisted after ratification. In some states during the mid-19th century, if individuals were "reasonably accused of intending to injure another or breach the peace," they could be subject to firearm restrictions that did not apply to others. *Bruen*, 142 S.Ct. at 2148–2149 (2022).

Sharpe's three prior felony convictions—one drug offense and two firearms offenses—demonstrate that, if armed, he poses a danger to society. Drugs and guns are a "dangerous combination" that increases the risk of violence. *Smith v. United States*,

5

508 U.S. 223, 240 (1993).  Moreover, Sharpe's two felony convictions for unlawfully carrying firearms indicate that he cannot be trusted to obey firearm regulations.  Sharpe falls into the historical group of people who "may be disarmed if convicted of making an improper or dangerous use of weapons."  *Bruen*, 142 S. Ct. at 2152.  Range, by contrast, had pleaded guilty to a misdemeanor of making a false statement to obtain food stamps, and had a criminal history otherwise limited to traffic tickets and fishing without a license.  *Range*, 69 F.4th at 98.

## II

Sharpe also believes, incorrectly, that 18 U.S.C. § 922(g)(1) is unconstitutional on its face, unconstitutionally vague and violates the Commerce Clause.

Facial challenges may be brought under the Second Amendment.  *See Heller*, 554 U.S. 570 (2008).  But "[a] party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  Sharpe cannot show that § 922(g)(1) is unconstitutional as applied to his case, let alone in all circumstances.

A criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted).  But § 922(g)(1) provides explicit notice that it bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than a year in prison (or of certain misdemeanors as defined).

Finally, Sharpe argues that 18 U.S.C. § 922(g)(1) is inconsistent with the original public meaning of the Commerce Clause. (Mot. to Dism., pp. 13–14). But he admits precedent forecloses this argument. (*Id.*); *United States v. Singletary*, 268 F.2d 196 (2001).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
